ON MOTION FOR REHEARING AND CERTIFICATION
JOANOS, Judge.
On consideration of appellant’s motion for rehearing and certification, and the state’s response, we withdraw our opinion of November 3, 1995, and substitute the following opinion in its place. Appellant’s motion is otherwise denied.
This is an appeal, following retrial, from convictions for first degree murder and manslaughter. We affirm. We address only one of the issues raised pertaining to the first degree murder conviction.
The basic facts of the case, and circumstances leading to the retrial, are set forth in this court’s opinion in Lark v. State, 617 So.2d 782 (Fla. 1st DCA 1993). In his first appeal, appellant contended the State violated his constitutional right to counsel by deliberately blocking his efforts to gather evidence in support of his voluntary intoxication defense, and he sought dismissal of the first degree murder charges on this basis. While *825 noting that “law enforcement authorities may not with impunity deliberately block the timely and reasonable efforts of defense counsel to gather probative evidence essential to the preparation of a defense,” 617 So.2d at 788, this court determined dismissal of the charges would not have been an appropriate remedy, and did not attempt to decide whether a violation had occurred. The reversal of the first conviction was based in part on the prosecutor’s improper comment on appellant’s invocation of his constitutional rights.
On remand, prior to the second trial, appellant filed with the trial court a Motion for Remedy for Interference with Right to Counsel and Right to Prepare a Defense. After setting forth the facts surrounding the thwarted defense efforts to obtain an earlier blood alcohol level, psychological testing to determine level of intoxication, access to a psychiatrist to determine state of mind, or examination by an emergency room physician, appellant pointed out that this court, in its decision on appeal, held that “law enforcement authorities may not with impunity deliberately block the timely and reasonable efforts of defense counsel to gather probative evidence essential to the preparation of a defense,” but stated that dismissal of the charges was not the appropriate remedy. He asserted that the trial court should decide the appropriate remedy, and that possible remedies included striking the premeditation element of the charge (count I as to Carole Lark) or suppressing the state’s premeditation evidence collected from the time of the shooting.
In its order on the motion for remedy for interference with right to counsel, the trial court found that the actions of the state constituted a violation of appellant’s rights, but denied the relief requested in the motion, stating that “the First District Court of Appeal opinion did not provide such a remedy and neither will this court.” The trial court determined that there was available “comparable evidence by other reasonable means to establish his state of mind at the time of the offense.” The trial court noted that there were numerous witnesses available to testily as to level of intoxication; the blood alcohol level test was, eventually, taken; “the Court notes the importance of keeping in mind that the Defendant’s state of mind or level of intoxication was not what existed at the jail but what existed at the time the offense was committed”; at the original trial, defense experts placed the BAL at the time of the shooting at .35 to .40, thus evidence was available, on retrial, as to the BAL at the time of the shooting; appellant could use the testimony of defense attorney Hughes as to what happened at the jail to explain why no BAL was available before 9:05 PM; expert witnesses were available to testify as to the effect of the BAL at the time of shooting on appellant’s ability to function and act.
The trial court also stated that in most cases involving issues of sanity at the time of the offense, mental health experts and other experts are called to give opinions as to sanity at the time of the offense, based on examinations that take place months after the offense, thus the time of the examination by the expert is not crucial to the issue. The court further noted that “the remedy the Defendant is seeking has been granted by the District Court’s opinion in that the State will not be permitted to bring out as rebuttal the Defendant’s invocation of his constitutional rights when, and if, the defense offers testimony as to the non-availability of an earlier blood sample.” The court finally determined that to grant the remedy requested, striking premeditation from count I or suppressing the state’s premeditation evidence collected from the time of the shooting, would in effect grant a dismissal, which this court had declined to do.
On appeal, appellant argues that even though the trial court determined a violation of appellant’s rights had occurred, in effect, it provided no remedy for that violation. Citing United States v. Morrison, 449 U.S. 361, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981), appellant asserts the remedy for a Sixth Amendment violation must be tailored to the injury. Appellant contends it was apparent from the beginning that the only issue at trial would be his state of mind, and that the record shows that the state’s interference with preparation of the defense was intentional. He further asserts that the comparable evidence *826 identified by the trial court was not comparable, and that when the defense attempted to use the alternatives mentioned by the court, the state took advantage of the limited nature of the evidence.
In response to the trial court’s suggestion that numerous witnesses were available to testify about his level of intoxication, appellant argues that, with the exception of Margaret Bailey and EMT Harris, the witnesses were all law enforcement personnel who attempted to understate his level of impairment. As to the eventual BAL and the availability of experts, appellant contends the experts were required to extrapolate backwards from 9 PM to 4:30 PM; they were “brutalized” on cross-examination at the first trial; and that the state suggested during closing arguments, without evidence, that his high BAL was due to his having taken another drink after the shooting. As to the suggestion that defense attorney Hughes could explain what occurred at the jail, appellant points out that explaining the nonexistence of evidence is not the same as having the evidence. As to the use of experts on the effects of a high BAL, appellant argues the trial court overlooked the inferiority of evidence of how people in general are affected by alcohol as opposed to how he specifically was affected by it. He asserts expert testimony based on a contemporaneous psychological examination would have been superior to expert testimony based on a later examination. Appellant points out that unlike most cases involving evidentiary improprieties, the violation here cannot be remedied by either suppressing evidence or requiring production of evidence.
In answer to appellant’s argument, the state presents two basic arguments: that this court addressed this issue in appellant’s first appeal, and that to grant the remedy requested would result in de facto dismissal of first degree murder charges, which this court earlier declined to do; and that appellant was not precluded from presenting his defense, because, as the trial court pointed out, even if the BAL had been conducted immediately, experts would have been required to extrapolate backwards to determine the BAL at the time of the shootings. The state asserts the critical factor in assessing appellant’s condition at the time of the shooting, based on the BAL level, was when he had his last drink. In this context, the state asserts that by presenting testimony indicating appellant’s condition deteriorated between the time emergency assistance arrived and he arrived at the sheriffs office, the state provided evidence from which the jury could infer appellant had continued drinking after the shootings. The state contends that appellant presented no evidence that he stopped drinking before the murders and was thus at the highest BAL level at the time of the shootings, even though it was his burden to establish the affirmative defense of voluntary intoxication.
While we note that it might have been helpful to the defense to have available expert testimony as to appellant’s condition at the time period in question, shortly after the shootings, and a series of BAL tests, beginning shortly after the shootings, so that it could be determined whether appellant’s BAL was rising or falling, we conclude the trial court did not commit reversible error in failing to grant the relief appellant requested. We believe that in asking the trial court to prohibit presentation of evidence bearing on premeditation, or strike the element of premeditation from the charge, appellant asked for too drastic a remedy which would, in effect, have granted the dismissal of the first degree murder charge that was denied in the previous appeal.
As set out above, the trial court suggested certain alternatives were available to develop the intoxication defense. On retrial, appellant apparently decided to forego some of the means which the trial court had noted were open to him to develop his defense. For example, on retrial appellant chose not to present the expert testimony, presented at the first trial through two defense witnesses, indicating his BAL at the time of the shootings could have been as much as .35 or .41. Only a witness for the state, Easter, testified on retrial as to BAL. Easter testified that appellant’s BAL at 9PM was .23, but he was unable to extrapolate backwards to the time of the shooting, because it was critical to know the time the last drink was taken. In *827 addition, on retrial, appellant chose not to present the testimony of attorney Hughes, who had testified at the first trial as to the circumstances surrounding the inability to obtain an earlier BAL. Because of this court’s decision on appeal of the first trial, appellant was free to put on Hughes’ testimony without fear that the state would comment on the invocation of his constitutional rights.
Appellant complains that the state suggested to the jury without evidence that his high BAL was due to “post-shooting chug-a-lugging,” however, we note that the state first made this suggestion, without objection, during rebuttal' argument at the first trial. No effort was made before the second trial to preclude such a suggestion, and no objection was made when the same suggestion was made at closing during the second trial.
Finally, some evidence was presented on retrial which could have supported the voluntary intoxication defense, and the.jury apparently chose to disregard it. Bailey testified that Carole Lark told her on the telephone, before Bailey arrived and before the shootings took place, that she had never seen appellant in such bad shape; EMT Harris testified that when he arrived shortly after the shooting, appellant was “blasted out of his gourd.”
For these reasons, we are unable to conclude that reversible error has been demonstrated in the trial court’s failure to provide the remedy requested.
AFFIRMED.
WEBSTER, J., and REYNOLDS, Associate Judge, concur.